# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ALEXANDER JIGGETTS,

Plaintiff,

v.   Civil Case No.: SAG-18-3399

JANSSEN PHARMACEUTICALS, INC.,

Defendant.

## MEMORANDUM OPINION

Plaintiff Alexander Jiggetts filed this action, *pro se*, against Defendant Janssen Pharmaceuticals, Inc. ("Janssen"), alleging that he suffered injuries after ingesting two drugs he alleges were manufactured by Janssen. ECF 56 (Amended Complaint). Four motions are currently pending: Plaintiff's Motion for Trial by Judge And Or Jury Trial, ECF 60; Plaintiff's two Motions for Order to Issue Subpoenas, ECF 71 and 75; and Janssen's Motion for Summary Judgment, ECF 66. I have reviewed those Motions, and the associated Oppositions and Replies. ECF 69, 70, 74, 77, 79. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons described below, Plaintiff's Motions will be denied, and Janssen's Motion will be granted.

Plaintiff filed this action on October 29, 2018, alleging that he "grew breast," suffered weight gain, and experienced fatigue after taking Risperidone and Invega Sustenna. ECF 1. United States District Judge Richard D. Bennett issued a Scheduling Order on January 28, 2019, and the parties commenced discovery. ECF 11. The scheduling order provided a deadline of March 29, 2019 for Plaintiff to identify expert witnesses pursuant to Federal Rule of Civil Procedure 26(a)(2), and set a discovery deadline of June 12, 2019. ECF 11 at 2. Plaintiff did not

identify any expert witnesses on or before March 29, 2019. In fact, on March 26, 2019, Plaintiff served answers to Janssen's Interrogatories, in which he represented, in relevant part, that he had not "been to the doctors about this situation," and did not have "the lot number and product code" for the drugs he allegedly consumed. ECF 79-2 at 3 (Response 2); *id.* at 4 (Response 6); *see also* ECF 66-5 at 2 (Plaintiff's Response to Janssen's Request for Documents No. 4, stating, "I haven't seen any doctors [sic] in reference to the injuries in my complaint"). In his response to discovery requests, Plaintiff acknowledged that he had no documents to support his claim, and had no expert witness to testify on his behalf. ECF 66-4 at 3-4.

According to documents Plaintiff submitted in connection with the pending motions, he first began seeking medical treatment in April, 2019, though he did not supplement his discovery responses to Janssen. ECF 79-2 at 1-2 (calendar entries showing medical appointments). Plaintiff also submitted an April 11, 2019 lab result from LifeBridge Health, showing elevated "Prolac" levels. ECF 69-1 at 2. Plaintiff attached an October, 2019 message exchange appearing to be with a medical doctor, Dr. Arshpreet Kaur, in which Dr. Kaur opined that "risperdal and invega"[1] "do not usually cause erectile dysfunction as a side effect," but advised Plaintiff to check with his Urologist. ECF 69-1 at 3. Dr. Kaur stated that "the high prolactin levels were most likely due to the medications," but asked for additional blood work to confirm the finding. *Id.* Dr. Kaur also said that "risperidone and Invega can cause weight gain" as a known side effect. *Id.* at 4. Finally, Plaintiff submitted what appeared to be an October, 2019 message exchange with Dr. Aaron C.

---

[1] Although Plaintiff asked Dr. Kaur about use of "risperdal and invega," ECF 69-1 at 3, Janssen, in its memorandum, identifies the drugs in question as "Risperidone and Invega Sustenna." ECF 66. Dr. Kaur appeared to understand the drugs Plaintiff was referring to, as his response mentioned "risperidone and Invega," although that cannot be confirmed without any testimony or records from Dr. Kaur. ECF 69-1 at 4. The discrepancy highlights the lack of information about precisely which drugs Plaintiff took, and who manufactured them.

Weinberg, in which the doctor said, "I am happy to try other medications for erectile dyfunction [sic], unfortunatly [sic] the Medications you are on can cause erectile dysfunction." *Id.* at 5.

Janssen now seeks summary judgment. Summary judgment is warranted where the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the non-moving party, the plaintiff must adduce evidence establishing that a "reasonable jury could return a verdict" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Although the precise parameters of Plaintiff's claims against Janssen are unclear, Plaintiff has not met his burden as to several basic elements of his claim that would need to be met whether his claim is construed as a "failure to warn" or a "design defect" claim for products liability. *See* ECF 56 at 1. First, Plaintiff has not proffered any admissible evidence that he took pharmaceuticals manufactured by Janssen. *See Lee v. Baxter Healthcare Corp.,* 721 F. Supp. 89, 92 (D. Md. 1989) ("Under traditional products liability law, the plaintiff must prove that the defendant manufacturer made the product that caused plaintiff's injury."). Plaintiff asserted "privilege" in response to Janssen's discovery requests seeking information about his prescribing physicians, and provided no medical records to support his claim during discovery. *See, e.g.*, ECF 66-4; ECF 79-2. He specifically denied having the "lot number and product code" for the medications he took, rendering it impossible to identify the manufacturer of those medications as Janssen. ECF 79-2 at 4 (Response 6).

3

Belatedly, now, Plaintiff has filed motions seeking to subpoena his treating and prescribing doctors and hospitals.[2] ECF 71 at 1; ECF 75 at 1. Plaintiff should have pursued those records during the discovery period, either by seeking subpoenas at that time, or by assisting Janssen's counsel to investigate by providing the medical releases Janssen would need to subpoena the information. Plaintiff cannot thwart the discovery schedule set by the Court by impeding discovery during the relevant window, and then seeking subpoenas long after discovery ends. *See McNeil v. United States,* 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *DeWitt v. Hutchins,* 309 F. Supp. 2d 743, 748 (M.D.N.C. 2004) ("Furthermore, a party's failure to comply with a scheduling order due to inattention, error, or unfamiliarity with court procedures will not be excused by his pro se status."). Other information Plaintiff now seeks in his motions for order to issue subpoenas, after the end of the discovery period, relates to general issues dealing with other litigation across the country involving related medications, and will not address any of the fundamental flaws in Plaintiff's case. Accordingly, Plaintiff's two Motions for Order to Issue Subpoenas, ECF 71 and 75, are denied as both untimely and largely irrelevant.

In addition to his inability to establish that he ever took pharmaceuticals manufactured by Janssen, Plaintiff has not demonstrated that he has suffered any damages. He has provided no medical records, even from the physicians he contends he began seeing in 2019, to show any clinical findings to support any of the symptoms he alleges. He submits only calendar entries and apparent recent message exchanges with the doctors, except for a single test result showing

---

[2] Plaintiff's request to subpoena the CEO of Spring Grove Hospital Center, ECF 71 at 1, is unusual. Typically, if a medication had been prescribed to a patient for more than two years as Plaintiff alleges, the patient would know the name or identity of the treating doctor, and would not be seeking to subpoena those records from a hospital executive.

elevated prolactin. ECF 69-1 at 2-5; ECF 79-2 at 1-2. By Plaintiff's own assertion, his prolactin level has now dropped significantly, ECF 79 at 5, and he has adduced no medical evidence suggesting that temporarily elevated prolactin levels cause any functional impairment.[3]

Finally, Plaintiff has proffered no evidence that Risperidone or Invega Sustenna caused any of the medical conditions he alleges, even if it were to be assumed that he consumed those drugs. *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.,* 892 F.3d 624, 642 (4th Cir. 2018) ("For specific causation, the plaintiff must 'demonstrate that the substance actually caused injury in her particular case.'" (quoting *In re Lipitor*, 150 F. Supp. 3d 644, 649 (D.S.C. 2015))). Causation is generally required to be established through expert testimony. *See Rohrbough v. Wyeth Labs., Inc.,* 916 F.2d 970, 972 (4th Cir. 1990) ("[P]roof of causation [that defendant's vaccine caused plaintiff's injuries] must be by expert testimony."); *Miskin v. Baxter Healthcare Corp.,* 107 F. Supp. 2d 669, 672 (D. Md. 1999) ("[E]xpert testimony is usually necessary since the evidence relating to causation involves technical medical questions beyond the common knowledge of laypersons . . . ."). Plaintiff did not identify an expert witness in accordance with the Court's Scheduling Order, *see* ECF 11 at 2, and there is no indication that Plaintiff has any evidence suggesting causation in this case, even from the two physicians he appears to have messaged. The fact that the doctors stated during informal message exchanges that the drugs "can cause weight gain" or "can cause erectile dysfunction," ECF 69-1 at 3, 5, does not establish that drugs manufactured by Janssen did cause the symptoms in Plaintiff's case.

---

[3] Plaintiff submitted a "Line" in which he asserts that high levels of Prolactin "can cause (impotence) lack of sex drive and or erectile dysfunction and male breast growth." ECF 69-1 at 1. Plaintiff's unsubstantiated layperson assertion is not competent evidence to prove that point. *See Liberty Lobby,* 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading . . . .").

As noted above, Plaintiff did not properly engage in discovery during the court-ordered discovery period, which might have better allowed him to establish his claim. *Pro se* litigants are required to abide by the procedural rules, which include adherence to the schedule set by the Court. *See In re Under Seal,* 749 F.3d 276, 290 (4th Cir. 2014) (reiterating that procedural rules apply equally to pro se litigants (quoting *McNeil*, 508 U.S. at 113)).

Because, described above, summary judgment in favor of Janssen is appropriate, Plaintiff's motion for a trial will be denied. Therefore, this Court will grant Janssen's Motion for Summary Judgment, and deny the three Motions filed by Plaintiff. A separate implementing Order follows.

Dated: November 25, 2019                         /s/
                                                 Stephanie A. Gallagher
                                                 United States District Judge